# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROGAN EDWARD LAMPE,

Defendant-Appellant.

UNPUBLISHED
June 23, 2016

No. 326660
Washtenaw Circuit Court
LC No. 14-000322-FH

Before: FORT HOOD, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (victim between 13 and 15 years of age), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (victim between 13 and 16 years of age). Defendant was sentenced to 10 to 15 years' imprisonment for each of his CSC-III convictions and 16 months to 2 years' imprisonment for his CSC-IV conviction. Defendant was also ordered to pay court costs in the amount of $1,611. We affirm defendant's convictions but remand for further proceedings consistent with this opinion.

Defendant first argues that the prosecutor committed misconduct by disparaging defendant's credibility and bolstering the credibility of the prosecution witnesses during his closing argument. Because defendant did not object to the prosecutor's conduct at trial, this issue is unpreserved and review is limited to plain error affecting substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014).[1] Error requiring reversal will not be found when a curative instruction could have displaced any prejudicial effect of the prosecutor's misconduct. *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005).

---

[1] We disagree with defendant's assertion that his claim could not be preserved because he was ordered not to interrupt during the prosecution's closing argument. Defendant mischaracterizes the record. During the prosecution's closing argument, defense counsel objected. The prosecution responded to the objection, and stated, "Your Honor, I'm going to ask that [defense counsel] not interrupt." The court overruled the objection, but never ordered defendant not to interrupt. Accordingly, we reject defendant's claim.

-1-

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Questions of prosecutorial misconduct are decided on a case-by-case basis, and a prosecutor's remarks must be evaluated in context, including the defense arguments, and their relationship to the evidence admitted at trial. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014); *Dobek*, 274 Mich App at 64. "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011).

A prosecutor is free to argue from the facts that a witness should be believed, *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005), and "may argue from the facts that a witness, including the defendant, is not worthy of belief," *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). A prosecutor may "comment on his own witnesses' credibility during closing argument, specifically when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, a prosecutor is not permitted to vouch for the credibility of a prosecution witness by implying that he or she possesses "special knowledge" of the witness's truthfulness. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

Here, the remarks challenged by defendant, which were made during the prosecutor's closing argument, were proper. Defendant claims that the prosecutor wrongfully argued that defendant had a personal interest in the outcome of the case while the prosecution witnesses did not. "The credibility of a witness is always an appropriate subject for the jury's consideration. Evidence of a witness' bias or interest in a case is highly relevant to credibility." *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995). Indeed, the Michigan Model Criminal Jury Instructions include an instruction which states that when assessing credibility, jurors should consider "any bias, prejudice, or personal interest" the witness may have in how the case is decided. M Crim JI 3.6(3)(e); see also M Crim JI 3.6(3)(g) ("In general, does the witness have any special reason to tell the truth, or special reason to lie?"). Because of the conflicting testimony offered by the victim and defendant, the jury's verdict largely depended on who the jury believed. Thus, it was appropriate for the prosecutor to comment on the personal interests of the witnesses. *Thomas*, 260 Mich App at 455. In so arguing, the prosecutor did not improperly imply that he possessed any special knowledge of the witnesses' truthfulness. *Seals*, 285 Mich App at 22. Therefore, we find no plain error in the challenged remarks.

Defendant also challenges several remarks made by the prosecutor concerning defense counsel. "A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). However, the prosecutor's remarks must be read in context, *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996), and "must be considered in light of defense counsel's comments," *Watson*, 245 Mich App at 592-593. In this case, the prosecutor stated that "defense counsel did a really good job of trying to confuse some of the issues, trying to muddy the waters, [and] trying

to harp on the issue of what is rape and what is not rape."[2]  This comment was not made in response to any of defense counsel's comments and could be interpreted as insinuating that "defense counsel was trying to distract the jury from the truth."  See *Dobek*, 274 Mich App at 67. However, we conclude that this isolated remark did not result in plain error because it did not impact the outcome of trial.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  Any resulting prejudice from the statement could have been alleviated by a timely objection and a curative instruction; thus, we find no error requiring reversal.  *Johnigan*, 265 Mich App at 467. Indeed, the jury was instructed that the lawyers' statements and arguments were not evidence, and jurors are presumed to follow their instructions.  *People v Waclawski*, 286 Mich App 634, 674; 780 NW2d 321 (2009).

Next, defendant challenges the scoring of prior record variable (PRV) 5 and argues that he is entitled to resentencing.  When reviewing a scoring issue, the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence.  *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  The court's application of the facts to the statutory scoring conditions is a question of statutory interpretation that is reviewed de novo on appeal.  *Id.*

PRV 5 pertains to a defendant's prior misdemeanor convictions or prior misdemeanor juvenile adjudications.  MCL 777.55.  Defendant was assessed a score of 10 points under PRV 5, which is appropriate when a defendant has three or four prior misdemeanor convictions or prior misdemeanor juvenile adjudications.  MCL 777.55(1)(c).  Prior misdemeanor convictions should only be counted if the misdemeanor "is an offense against a person or property, a controlled substance offense, or a weapon offense."  MCL 777.55(2)(a).  The parties agree that defendant's prior military convictions should be categorized as misdemeanors under the guidelines.  The dispute concerns whether defendant's convictions for conduct unbecoming an officer and a gentleman pursuant to Article 133 of the Uniform Code of Military Justice (UCMJ), 10 USC § 933, fit into one of the specified categories for purposes of scoring PRV 5.

Criminality is assessed for conduct unbecoming an officer and a gentleman when an individual commits an act that "offend[s] so seriously against law, justice, morality, or decorum as to expose to disgrace, socially or as a man, the offender, and at the same time [is] of such a nature or committed under such circumstances as to bring dishonor or disrepute upon the military profession . . . ."  *Parker v Levy*, 417 US 733, 753-754; 94 S Ct 2547; 41 L Ed 2d 439 (1974) (quotation omitted); see also Article 133, UCMJ, 10 USC § 933 ("Any commissioned officer, cadet, or midshipman who is convicted of conduct unbecoming an officer and a gentleman shall be punished as a court-martial may direct.").  This offense, by its nature, is not an offense against a person or property, a controlled substance offense, or a weapon offense.  Rather, the offense of

---

[2] The prosecutor also referenced defense counsel in several other statements; however, when read in context, these statements were each properly based on the evidence or made in direct response to defense counsel's comments.  Thus, we do not find them to be improper.  See *Kennebrew*, 220 Mich App at 608; *Watson*, 245 Mich App at 592-593.

conduct unbecoming an officer and a gentleman only generally proscribes conduct that is "dishonoring." See *Parker*, 417 US at 753-754.

The prosecution relies on *People v Crews*, 299 Mich App 381, 398-399; 829 NW2d 898 (2013). In *Crews*, this Court was asked to determine whether the defendant's prior conviction for "attempting to commit an offense" under Ohio criminal law was properly scored as a misdemeanor under PRV 5. *Id.* at 398-399. The defendant admitted that the charge underlying his attempt conviction was a controlled-substance offense, but he argued that the attempt conviction should be "completely severed" from the underlying substance-abuse charge. *Id.* at 399. The defendant believed that his attempt conviction did not constitute "an offense against a person or property, a controlled substance offense, or a weapon offense" for purposes of scoring PRV 5. *Id.* at 398. This Court disagreed, reasoning that "Ohio's attempt statute *specifically ties an attempt conviction to the crime attempted.*" *Id.* at 399 (emphasis added). Accordingly, this Court looked to the crime attempted, which was a controlled-substance offense, and found no error in scoring the defendant's prior conviction under PRV 5. *Id.* Here, contrary to the attempt offense considered in *Crews*, the crime of conduct unbecoming an officer and a gentleman was not necessarily tied to an underlying offense. Notably, *Crews* did not include any discussion of whether this Court should look only to the nature of the crime or to the facts underlying the offense committed. Accordingly, we disagree that the analysis in *Crews* controls in this case.

Because the offense does not fall within one of the categories set forth in PRV 5, we conclude that the trial court erred in counting defendant's two prior convictions for conduct unbecoming an officer and a gentleman in its scoring of the variable. Defendant should have only been assessed two points under PRV 5 for his prior conviction for wrongful sexual contact. Because this scoring error altered the appropriate guidelines range, defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

Defendant also asserts that he is entitled to resentencing based on our Supreme Court's holding in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). For a defendant to demonstrate plain error and be entitled to a remand under *Lockridge*, the defendant must show that his minimum sentence range under the guidelines was "actually constrained by [a] violation of the Sixth Amendment." *Id.* at 395. A defendant may establish a violation of the Sixth Amendment by showing that "facts admitted by [the] defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he . . . was sentenced." *Id.* (emphasis in original). Defendant, however, does not challenge the scoring of any of the OVs in this case. He only challenges PRV 5, and the *Lockridge* holding does not impact the scoring of PRVs. See *id.* In his brief on appeal, defendant merely reiterated the holding in *Lockridge* and stated, without support, that resentencing was required. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). Therefore, defendant has not established plain error entitling him to a remand under *Lockridge*.

Defendant next argues that the trial court erred in imposing court costs because the trial court did not have independent authority for the imposition of costs, as required by *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014). In *Cunningham*, our Supreme Court held

that the former version of MCL 769.1k(1)(b)(*ii*) provided courts with the authority to impose only those costs that were separately authorized by statute. *Id*. at 154. In this case, the imposition of court costs was not separately authorized by statute, as required by *Cunningham*. Nonetheless, the trial court's imposition of court costs was authorized by the amended version of MCL 769.1k(1)(b)(*iii*). On October 17, 2014, the Legislature amended MCL 769.1k to allow a trial court to impose any costs reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case. MCL 769.1k(1)(b)(*iii*). Therefore, the trial court did not err in imposing the court costs upon defendant. Although the court costs do not need to be separately calculated, MCL 769.1k(1)(b)(*iii*), the trial court must establish a factual basis under the statute for the costs imposed. *People v Konopka (On Remand)*, 309 Mich App 345, 359; 869 NW2d 651 (2015). "[W]ithout a factual basis for the costs imposed, we cannot determine whether the costs imposed were reasonably related to the actual costs, as required by MCL 769.1k(1)(b)(*iii*)." *Id*. at 359-360. Here, the trial court imposed court costs without explanation. Accordingly, we remand to the trial court to establish a factual basis of the court costs imposed.

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4. Defendant first challenges the sufficiency of the evidence with respect to the charged crimes. Challenges to the sufficiency of the evidence are reviewed de novo to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (citation omitted). "This Court reviews the evidence in the light most favorable to the prosecution." *Id*. "This Court resolves all conflicts regarding the evidence in favor of the prosecution," *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012), and "[q]uestions of credibility are left to the trier of fact and will not be resolved anew by this Court," *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

Sufficient evidence was presented supporting defendant's convictions of the charged offenses. Defendant's CSC-III convictions arose under MCL 750.520d(1)(a). Under this provision, a defendant may be convicted of CSC-III if the defendant engaged in sexual penetration with another individual, and that individual was at least 13 but less than 16 years of age. MCL 750.520d(1)(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of another person's body . . ." MCL 750.520a(r). Here, the victim's age is not in dispute; he was 13 years old at the time of the alleged sexual assault. The victim provided detailed testimony regarding two separate acts of sexual penetration—anal penetration and fellatio. Both of these acts constitute "sexual penetration" under the statute. MCL 750.520a(r). In CSC cases, the victim's testimony is sufficient to support a defendant's conviction and need not be corroborated. *People v Brantley*, 296 Mich App 546, 551; 823 NW2d 290 (2012); MCL 750.520h. Accordingly, viewing this evidence in a light most favorable to the prosecution, *Russell*, 297 Mich App at 721, sufficient evidence was presented to support a finding beyond a reasonable doubt that defendant was guilty of two counts of CSC-III.

With respect to defendant's CSC-IV conviction, the charge arose under MCL 750.520e(1)(a). Under this provision, a defendant may be convicted of the charged offense if the defendant engaged in sexual contact with another person, that person was between 13 and 16

years of age, and the defendant was five or more years older than the person. MCL 750.520e(1)(a). "Sexual contact" is defined by statute as "the intentional touching of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification [or] done for a sexual purpose . . ." MCL 750.520a(q). Intimate parts include "the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f).

The evidence established that defendant was at least five years older than the 13-year-old victim. The victim testified that defendant rubbed his genital area while defendant kissed him and lay undressed on top of him. Viewing this evidence in a light most favorable to the prosecution, *Russell*, 297 Mich App at 721, it was sufficient for a finding that defendant intentionally touched the victim's intimate parts for a sexual purpose. Therefore, sufficient evidence was presented to convict defendant of CSC-IV.

Defendant's argument that the evidence supporting his guilt was not believable also fails. Defendant asks this Court to re-weigh the evidence and resolve conflicting testimony in his favor. "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998). "[U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id*. at 645-646 (citation and internal quotation marks omitted). While the victim's testimony may have been impeached to some extent, and conflicting evidence certainly arose, we do not agree that the prosecution's evidence was so far impeached that it was deprived of all probative value, contradicted indisputable physical facts, or defied physical realities. Thus, we reject defendant's claims.

Relatedly, defendant argues that defense counsel was ineffective for failing to move for a directed verdict after the prosecutor's case-in-chief. Based on our holding that there was sufficient evidence to sustain defendant's convictions, defense counsel was not ineffective for failing to ask for a directed verdict because any effort to do so would have been futile. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant raises several challenges to the prosecutor's conduct at trial. Again, we review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *Gaines*, 306 Mich App at 308. Ultimately, we reject all of defendant's prosecutorial misconduct claims raised in his standard 4 brief, and discuss several briefly herein. To the extent that we do not specifically address a claim raised by defendant, we note that we have reviewed all arguments and concluded they lack merit.

Defendant asserts that the prosecutor withheld information about a key witness, Mike Richardson, from defense counsel. At trial, the victim testified that Richardson, the victim's mother's boyfriend, was the first person to whom he disclosed the sexual assault. The lead investigator on the case testified that he did not make a report about the victim's disclosure to Richardson or speak to Richardson. Defendant's claim that the prosecutor withheld information regarding Richardson appears to invoke *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). We conclude that no *Brady* violation occurred because defendant does not show,

and makes no argument, that Richardson's testimony would have been favorable to him or material to the outcome of trial. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). We also reject defendant's claim that the prosecutor misled the jury and presented hearsay evidence during closing arguments as related to Richardson. The prosecutor's remarks at closing argument were based on the victim's direct testimony that he told Richardson about the assault. The prosecutor was free to argue facts in evidence and reasonable inferences therefrom. *Dobek*, 274 Mich App at 66.

We also reject defendant's claim that the prosecutor committed misconduct by repeatedly using leading questions while questioning the victim. "[A] considerable amount of leeway may be given to a prosecutor to ask leading questions of child witnesses." *Watson*, 245 Mich App at 587. Additionally, under MRE 611(d)(1), leading questions may be used to the extent "necessary to develop the witness' testimony." Contrary to defendant's argument, the questions asked by the prosecutor to the victim were not leading because the questions did not suggest a certain answer. However, even assuming for the sake of argument that the questions were leading, the prosecutor asked these questions only to the extent necessary to develop the victim's testimony, as permitted by MRE 611(d)(1). Given the "considerable amount of leeway" given to the prosecutor when questioning child witnesses, this questioning did not amount to prosecutorial misconduct. See *Watson*, 245 Mich App at 587.

Next, defendant claims that the prosecutor "manipulated" evidence because the jury was not allowed to see the police reports despite their request for the documents during deliberation. It is unclear how the prosecutor "manipulated evidence," but to the extent defendant asserts that the jury should have been permitted to view the police reports, we disagree. The reports were not admitted as evidence at trial and defendant waived the issue by agreeing that the jury should not be shown the police reports. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). Defendant's claim that the prosecutor "acted as an unsworn witness" in his closing argument is also meritless. Defendant asserts that the prosecutor misled the jury and acted as a medical or forensic expert when the prosecutor argued that "[p]eople heal," and stated "[t]he fact that his DNA isn't there doesn't make any difference at all." A prosecutor is not required to confine his argument to the "blandest" possible terms. *Dobek*, 274 Mich App at 66. The prosecutor was merely appealing to the jury's common sense and arguing a reasonable inference stemming from the evidence. *Id.* Additionally, the prosecutor did not commit misconduct by stating that the lack of DNA evidence did not make a difference. The trial court instructed the jury that "it [was] not necessary that there be evidence other than the testimony of [the victim] if that testimony proves guilt beyond a reasonable doubt."

Next, defendant claims that the prosecutor improperly shifted the burden of proof to defendant by informing the jury that defendant could not account for the bruising on the victim's ears or the victim's anal injuries. A prosecutor may not imply to a jury that a defendant must prove something at trial. *People v Guenther*, 188 Mich App 174, 180; 469 NW2d 59 (1991). In so doing, the prosecutor tends to shift the burden of proof. *Id.* "However, where a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant." *People v Fields*, 450 Mich 94, 115; 538 NW2d 358 (1995). Here, defendant testified and advanced an alternate theory that would exonerate him, and the prosecutor properly commented on the invalidity of that theory by

pointing out that it did not account for the victim's observed injuries. Accordingly, this argument lacks merit.

Next, defendant argues that the prosecutor committed misconduct by using the term "victim" 48 times during his closing argument and repeatedly using the term "rape" while questioning the victim as if it were fact. Victim is defined as "[a] person harmed by a crime, tort, or other wrong." *Black's Law Dictionary* (9th ed). We do not agree that it was misconduct for the prosecutor to use this term as the definition does not imply a crime was committed. With respect to the prosecutor's use of the term "rape," defendant only provides one example of the prosecutor using the term and our review of the record did not reveal that the term was incessantly used. In fact, before the prosecutor used the term "rape," the victim used the term to describe what occurred. Moreover, the jury was instructed that the lawyers' questions were not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Next, defendant asserts that the prosecutor told the trial court "that a defense does not have to be allowed." This claim lacks merit because the statement cited by defendant occurred outside the presence of the jury and, thus, could not have affected the outcome of the trial. Finally, defendant argues that the prosecutor made an improper civic duty argument during his closing argument. While a prosecutor may not make civic duty arguments that appeal to the fears and prejudices of the jury, *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995), or ask a jury to convict a defendant as part of its civic duty, *People v Ackerman*, 257 Mich App 434, 452; 669 NW2d 818 (2003), that did not occur here. The statement challenged by defendant is the following: "I think we all can tell, or hoping, that you'll make the determination that that was a pretty rehearsed lie." Read in context, the prosecutor made this statement directly after explaining that defendant could not account for the victim's injuries in his testimony and discussing defendant's explanation for the events—"if anything happened, it happened in my sleep." This argument did not constitute an improper civic duty argument. The challenged statement pertained entirely to defendant's guilt. The prosecutor was free to argue reasonable inferences from the evidence, as he did so here, and "argue from the facts that a witness, including the defendant, is not worthy of belief." *Launsburry*, 217 Mich App at 361.

Next, defendant argues that the trial court abused its discretion by admitting other-acts evidence concerning defendant's commission of a prior sexual assault in violation of MRE 404(b). This Court reviews a challenge to the admission of evidence for an abuse of discretion. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007).

MRE 404(b)(1) prohibits evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith," but expressly allows such evidence to be admitted for other purposes. Under MRE 404(b), evidence of other crimes, wrongs, or acts is admissible only if the evidence is (1) offered for a proper purpose rather than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to prevail under the balancing test of MRE 403. *People v Hoffman,* 225 Mich App 103, 105; 570 NW2d 146 (1997).

The other-acts evidence in this case was offered and admitted for the proper purpose of proving defendant's common scheme or plan.[3] See MRE 404(b). Evidence is relevant to show a common scheme or plan when the charged crime and the prior act "are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." See *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). Here, both acts involved defendant committing a sexual assault after the victim fell asleep. In the prior act, the victim woke up to find his pants unzipped, his penis exposed, and defendant touching his genital area. Similarly, in the instant case, the victim woke up to find that defendant had removed the victim's clothing and was lying on top of him, touching his genital area. Given that these acts were sufficiently similar to support an inference of a common scheme or plan, we hold that the other-acts evidence was admitted for a proper purpose. *Id.*

Further, the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. MRE 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Because all relevant evidence is considered prejudicial, only evidence that is unfairly prejudicial will be excluded. *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011). "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *Id.* (citation omitted). Here, there was no indication that the jury gave the evidence undue weight, especially in light of highly probative nature of the evidence and the additional evidence against defendant presented at trial. Moreover, the trial court provided the jury with a limiting instruction concerning this evidence. Jurors are presumed to follow instructions from the trial court. *Waclawski*, 286 Mich App at 674. Therefore, we find no abuse of discretion in the admission of the other-acts evidence.

Defendant also argues that the trial court abused its discretion by excluding evidence of defendant's sexually transmitted disease (STD). The trial court found this evidence to be irrelevant and, alternatively, inadmissible under MRE 403. Under MRE 401, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence of defendant's STD was not relevant to any fact of consequence in this case. Defendant learned that he contracted an STD approximately one month after the time of the sexual assault. There was no way to know whether he was infected at the time of the incident. Thus, the fact that the victim did not contract an STD does not make it any less probable that defendant committed the charged offenses. Additionally, after disclosing the sexual assault, the victim received treatment to prevent STDs. It is plausible that the treatment prevented the victim from contracting an STD, even if defendant was infected at the

---

[3] The evidence was also offered for a number of other purposes articulated by MRE 404(b), including motive, opportunity, intent, preparation, and absence of mistake. Based on our conclusion that the evidence was logically relevant to the purpose of establishing a common scheme or plan, we do not discuss these other purposes herein.

time of the assault.  Furthermore, even if marginally relevant, the danger that the jury would confuse the issues if presented with evidence of defendant's STD substantially outweighs the evidence's probative value.  See MRE 403.  Accordingly, the trial court did not abuse its discretion by excluding the evidence.

Affirmed as to defendant's convictions, but remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola